1264 Trujillo v. Landmark Media Enterprises. Mr. Trujillo, I understand that you have reserved five minutes. Good morning, Your Honor. Thank you for allowing me the opportunity to speak today. As far as the matter before the court, it's been brought here in order to address the District Court's handling of certain aspects of the anti-retaliation provisions under RISA Section 510. In particular, the District Court made a reversible error when they indicated or found or held that I had not given any information or testified or was about to testify in any inquiry or proceeding. The record that was provided to the court clearly shows the contrary to that conclusion made by the District Court. First of all, I found errors in vesting issues that were originally thought to be related to one or two individuals, which then end up being close to a decade of systemic errors. Through that, I obviously was conducting an internal audit, but also working in conjunction with outside entities, such as the Planned Trustee, which was Vanguard. Vanguard actually admitted to their role in the vesting errors and was willing to make a commitment that commenced for it through paying penalties and fees owed to the plan, and then of course sending penalties owed as a result of the errors. I also worked with two outside law firms, Wamble and Carlisle and Wilcox and Savage. Those are not internal attorneys, as the King case relies on. I also worked with an outside accounting firm, Wall Einhorn and Schnitzer, which was brought in to prepare an audit and filings in order to file the Form 5500. The Form 5500 clearly is a federal inquiry intended to provide information regarding plan operations and to give the plan sponsors have a duty to ensure that there is some transparency on how the plans are working and if there's any issues in funding or operations, that is the avenue in which to report it. In preparing for the Form 5500s, I signed the rep letters, that is an attachment to the Form 5500, meaning I gave information intended to be utilized by the federal agencies that rely on those Form 5500s. Of course the Form 5500 has a penalty if an individual or a plan sponsor does not file it or properly file it. So it is a mandated review. It is a requirement that clearly shows an establishment of any inquiry or proceeding as dictated by the statutory language. In the King case, they indicated that they ruled against the plaintiff because the plaintiff made internal complaints. They said that an inquiry must be something more formal than a written complaint to a supervisor and they said that giving information, that phrase was included in the statutory language in order to ensure that non-testimonial information would be included in the inquiry that would be covered under the protection. In my situation, it is completely distinct from that. I did not file a complaint. I was a director of benefits and a fiduciary to the plan. I have legal obligations and duties and requirements placed on me to ensure that the plan runs appropriately and if there are issues that they are identified fully and then a remedial action is put in place. Those are the actions I was taking. You are not the plan administrator? No. You are not the plan trustee? No. You are not a plan sponsor? No. But if I have control over plan assets and making payments with plan assets, I am a fiduciary. It doesn't have to be a named fiduciary like a plan administrator, but a fiduciary is defined by the actions that that individual takes and the control that that individual has over plan assets. And my role satisfies that. I did provide incriminating documents because obviously with providing the information through the form 5500 through attachments, those documents are a window into what actually happened. And as well as a window into what actions were being prepared to correct that maladministration. King was not a fiduciary. King only could make an internal complaint. And my complaint to supervisors, if you will, you are talking about the vice president of human resources, the chief financial officer, who are the plan administrators for the area in place. That is an internal worker relationship. It is addressing the issue directly to the people who are held responsible for the administration of the plan. Thank you, Mr. Trujillo. May it please the court, Steven Silverman for the secretary. This case can be resolved by answering two questions. First, is an audit a type of inquiry? The answer under any ordinary common sense understanding of the word inquiry is clearly yes. And second, is giving information during a legally required audit more formal than making an oral or written complaint to management? The answer again is yes. It therefore follows that when Mr. Trujillo gave information concerning possible ERISA violations during the course of two plan audits, he was protected from retaliation under ERISA section 510. That is correct, your honor. Section 510 speaks to any inquiry. An audit, for example, does not have to be, under dictionary definitions, a governmental audit. An audit under dictionary definitions is simply an official examination of the books, an official examination of financial records, and an official examination of the financial records of the government. Would any discussion within any employer qualify in your view as an inquiry under the statute? Well, if the information is given during the course of or as part of the auditing process, then yes. The defendants make an argument that it was best... Does it make any difference that Mr. Trujillo signed the... What did he sign? Tell me that. Our reading of the complaint is that Mr. Trujillo signed the form 5500 as... Does that make any difference? It does, your honor. Does that distinguish him from somebody, two or three of his assistants who worked with him? So, it makes his claim stronger, your honor, but it should not be a difference as to... Well, your honor, because the signature that's in form 5500 has to be provided under penalty of perjury. And so, in that sense, it can be construed as testimony and in response to a standing inquiry by the federal government to provide a response, the standing inquiry being the requirement that form 5500 annual reports be provided. But I would like to address that, your honor. Mr. Trujillo, associate widget producer of the plan... Let's go back and find out about what the extent of the audit is that you coin here. Because there are thousands and thousands and thousands of these things that are filed, which are being reports. When you look at the form 5500, you report to the government how many participants there were, is this the name of the plan, is this the type of the plan, how many people were vested. There's not a whole lot of information there. So, the extent of your inquiry would seem to be quite limited. Well, the form 5500 requires, subject to certain exception, requires that an audit be prepared by an independent, qualified public accountant. That independent, qualified public accountant has to examine the books and the records of the plan and conduct an audit of the plan. And then it has to provide opinion that... He conducts that audit on behalf of the plan. That audit is conducted on behalf of the plan, your honor. And if I could address the producer... So, he's not conducting the audit on behalf of the government or any other outside agency? No, your honor. And that plan auditor is under no obligation to file anything with the government, is that correct? Well, the auditor's opinion will be filed with the government. That is a required attachment to the form 5500. I understand that, but that's only if the form 5500 is filed and if the employer authorizes it. Isn't that correct? Well, yes. And the employer is legally required to file that document. Congress has mandated that that document be filed and has, in fact, imposed criminal penalties for failure to file or for filing materially false information. The form 5500 is... An IPPA, an independent qualified public accountant, must conduct the audit of the plan. That then results in an opinion letter that must be attached to the form 5500. If I could just address that fiduciary question that you asked Mr. Trujillo about. Mr. Trujillo asserts that he was a fiduciary of the plan. Section 510 does not accord any special status to fiduciaries. And it's absolutely not required that Mr. Trujillo prove that he was a fiduciary in order to receive protection under Section 510. But an individual with potential fiduciary status is a factor in support of a broader reading of Section 510. Fiduciaries who know about problems with the plan have obligations to... Disclosure obligations and other obligations to correct problems with the plan. A fiduciary must be able to meet his fiduciary obligations without risk of retaliation. Otherwise, a fiduciary is caught between a rock and a hard place. Either meeting the fiduciary obligations and getting fired or not fulfilling fiduciary obligations and suffering the consequences. But the Secretary wants to be clear that under Section 510, it applies to any person. And there's no special status accorded to fiduciaries. I'd like to address two of the Defendant's main arguments. The first is that the inquiry under Section 510 must be governmental. And therefore, it does not cover internal inquiries by the plan. Beginning first with the statutory language, Section 510 applies to any inquiry. Not an internal, an external, or governmental inquiry, but any inquiry. Defendants are asking the Court to read... That doesn't appear to be what the Court concluded in King. I understand, Your Honor. And so this Court, in King, set a floor, a formality floor, essentially, that the inquiry that's conducted has to be more formal than a written or oral complaint to a supervisor. Absolutely, an audit that is congressionally mandated, legally required, is more formal, unquestionably more formal, than a legal complaint, excuse me, a written or oral complaint to a supervisor. Defendants are asking this Court to read words in the statute that are simply not there. Neither King nor any other Court has ever suggested or held that a Section 510 inquiry must be governmental and that it cannot be internal. Defendants' second argument is that a Form 5500 is not an inquiry because it occurs on a regular basis, on an annual basis. It's not prompted by a governmental inquiry. But this argument misses the point. It also requires Section, excuse me, the Form 5500 to include an audit, and that audit is a type of inquiry. Turning again to the statute, Section 510 applies to any inquiry subject to a level of formality dictated by this Court in King, and not only to inquiries that occur sporadically or by surprise or on special occasion. King does not support defendants' position, which again depends on this Court narrowly construing Section 510 based on words that are not in this statute. Defendants' brief expresses alarm that if a secretary's position is accepted, then, and I quote, any employee involved in the preparation of such annual reports could sue for retaliatory discharge under Section 510. But what's really alarming is that defendants find this troubling. These annual reports are intended to be the product of complete and frank exchanges of information between the plan and the auditor. They are the most critical disclosure documents that Congress mandates so that participants and the secretary have the information they need to protect participant rights. There are almost 3 million plans, $8 trillion in assets under management, and $175 million employees, retirees, and participants in private plans. The secretary simply cannot oversee and conduct its own audit of all these plans, and so Congress understood that, and one of Congress's mandates in passing ERISA was to therefore impose extensive recordkeeping, reporting, and disclosure requirements on the plan to enable those protections. The, excuse me, and as I mentioned, Congress deemed this so important that it criminalized filing a false form 5500. That the defendants are asking this court for a license to retaliate against anyone like Mr. Trujillo who provides full and accurate information during the course of a plan audit magnifies the need for this court to robustly construe Section 510 and reverse the decision of the court. Thank you very much. Good morning. May it please the court, my name is William Furham, counsel for the appellees in this case. There are two fundamental problems with the plaintiff's case. First, even though the complaint clearly alleges that the plaintiff was discharged for making internal complaints, they are now trying to argue that the plaintiff was fired for preparing annual reports to the IRS. All you have to do is look at the complaint. The operative facts are found. That's all we can do. That's all you can do. It's a motion to dismiss. Paragraph 33 of the complaint and paragraph 5 of the complaint are where they allege, where Mr. Trujillo alleges what he says we did wrong, and what he alleges that is he reported information to the defendants. He alleges that he made internal complaints and because of that he was fired. All you have to do is read the complaint and you can conclude that. The second fundamental problem is no court in the country has found a 5500 filing self-audit to be enough to trigger section 510 of ERISA. Has any court held it wasn't? It hasn't. It hasn't been addressed. So that's not, that really doesn't go anywhere, does it? We'd be the first court to do that. To do either one. That's correct. But what I'm saying, Your Honor, though, is you don't even have to get to that position because if you look at the relevant allegations in the complaint, King v. Marriott says internal complaints are not enough to state a claim. So that's the Fourth Circuit law and a lot of courts have cited to the Fourth Circuit on that basis. If you look at the four sentences in the complaint that are critical, three of them are in paragraph 33. One of them says defendants violated ERISA by retaliating against the plaintiff and discharging him after he advised the defendants that numerous ERISA violations occurred. Another sentence in paragraph 33. Plaintiff gave information to the defendants regarding multiple fiduciary breaches and ERISA violations which led to an internal inquiry. And that's the word used in King v. Marriott by this court, internal complaints are not enough. Well, yes, that's right. But then it said, it went on. I think that you are not too interested in the subtleties of our earlier opinion, which is fine, but what push is coming to shove now. And so it might be well to stick with the actual language we use there. And the Third Circuit and the Sixth Circuit have done that and they've cited King v. Marriott and said King v. Marriott stands for the proposition that internal complaints are not sufficient to state a claim under Section 510 of ERISA. That's what the court said. But that's not what we said. That's what the King and that's what the Fourth Circuit said in King v. Marriott is it. With a far more nuanced discussion of what the internal complaints might be. Now you say other circuits have gone further. Other circuits have also rejected the King analysis altogether. That's correct. There's a split in the circuits on that. Yeah. The Sixth Circuit and the Third Circuit have followed the Fourth Circuit. The Ninth Circuit and the Fifth Circuit issued opinions, but there was zero analysis. They just said because the plaintiff was a whistleblower, they were entitled to protection. The interesting thing about ERISA is that there are two different types of anti-retaliation clauses in employment laws in the United States. Title VII and most of them have opposition clauses. And an opposition clause is a clause that ERISA does not have and that says an employer cannot retaliate against an employee for opposing conduct. So when Congress enacted ERISA, it could have put an opposition clause in there. It chose not to do that. So a person can't sue under ERISA because they oppose what they think is unlawful. That's what Mr. Trillo is alleging here. What ERISA has in it, Section 510, is a participation clause. It's a different type of anti-retaliation clause. And what a participation clause says is an employer can't retaliate against an employee for testifying or participating in an inquiry or proceeding. So what Mr. Trillo, and again, you have to go back to the complaint and see what he alleges. He says, I gave information to the defendants. And the last part of the complaint I want to cite to the court is paragraph 5 that says a retaliation occurred following plaintiff repeatedly advising defendants of numerous fiduciary breaches. Mr. Perlin, I'm sorry to interrupt you. Sure. Here's one of the things that makes me nervous, and maybe you make me feel better. We have a pro se plaintiff before us on a 12B6 motion involving a substantial legal issue. So it makes me nervous deciding a substantial legal issue at this stage of the proceedings where we've got a pro se plaintiff who's drawn a complaint, and it's a big issue, and it's 12B6. And it just makes me nervous deciding a big issue like this in that context. Yeah. Well, I have a few responses to that. Number one is Mr. Trillo is a lawyer, and he's filed a risk of claims against prior employers. There's a case pending in the Seventh Circuit that he just lost on appeal, and he's been a litigant in court. Of course, none of that is in the complaint. It's not in the complaint. And you just like four minutes ago said all we can do is look at the complaint. Fair enough. But if you do look at the complaint, what he has alleged, a very smart guy who gave a very cogent argument a few minutes ago, said is that I complained to my boss. I complained to my employer, and because of that, I was fired. And under Title VII, that would be perfectly fine. Under the ADEA, that would be perfectly fine. Under the Americans with Discrimination Act, that would be fine. It's not fine under ERISA because Congress decided not to have an opposition clause. Congress decided to have a participation clause. And so he has to allege that he was participating in some sort of inquiry or proceeding, and he doesn't allege that. He says, I found unlawful conduct, I told my bosses, and they fired me. And if you look at King v. Marriott, there's no way that that case can survive. He said he was working on finalizing an audit of the DE-401K due to verification that defendants payroll department. I mean, he says that. There's lots of talk about that. He talks about what he was doing in his job, and part of what he was doing was participating in the preparation of the 5500. But what I'm saying to the court, just like Judge Agee said, is this is not an IRS audit. This is not a DOI audit. I don't understand that. Did he sign it? I think Susan Blake signed it. I think he signed the rep letter that doesn't even go to the IRS. Don't you need one? No. The law requires you to have one. You do not need one. The law does not require a rep letter. No. The rep letter goes to the auditor. It goes to the accountant. And some accountants require, almost all accountants require a rep letter. So, in other words, for the accountant to sign on, you need, it's a little step removed. But for this to be filed, there had to be this rep letter, right? ERISA does not require a rep letter. There's nowhere in ERISA that requires a rep letter. I understand that, but ERISA requires the 50, whatever it is. 5500. And our accountant required a rep letter. Right.  I understand that. But who required the 5500? The government. Okay. And it's an informational filing. It's not an IRS audit. It's not a DOL audit. And it's basically every... Is there a penalty if you don't file it? Yes. If you don't file it. And what the accountant is certifying is what money's in the plan, what money went into the plan, and what money went out of the plan. And who's a participant. And every employer with 100 or more participants has to file these. It's certainly not an inquiry. It's an informational submission. And if this were a situation where the government was actually looking into something that was going on at the defendants, I couldn't stand up here with a straight face and argue that there's no claim here. But if you look at the complaint and look to see what he's arguing, there can't possibly be an inquiry here. Because all he did was say, I think you all are violating ERISA. And then he claims he was fired. And the 5500s are certainly not enough. The Secretary of Labor, who is very knowledgeable in this area of the law, cited three cases to support their position that this was an inquiry. All three of those cases were active government investigations. There's the New York versus Cathedral Academy case where the state court was auditing a non-profit school's receipt of government funds. Active investigation by the government. U.S. versus head. The IRS was investigating attempted bribery by an IRS agent. Active investigation by the government. U.S. versus Bisseglia. IRS was investigating tax evasion case. So even the cases cited by the experts, the Secretary of Labor on this very point only cited the cases that said it was an inquiry if there was an active investigation by the government. They said that was the only reason it was. Or did they say it is an inquiry and there was an active investigation by the government? These courts said that this constituted an inquiry. Now it wasn't a list of cases. It was just a load of... No. Can I ask you something? What if an inquiry had happened after this 5500? I understand, at least the record here doesn't say that one did. Would your position be different? Yes. If the government had inquired and there had been an inquiry, if there had been an IRS audit or a DLL audit... After the 5500 was filed. After the 5500. Well, I don't see how what happens afterwards. In turn, his action here in to retaliation, to a cause of action for retaliation. Because he couldn't possibly be fired in retaliation for an inquiry that hadn't even begun yet. If he was fired because he said... Exactly. Right. So that's why I don't understand how your argument would be, would apply. No. What I'm saying is that he couldn't possibly argue that he was retaliated against for an inquiry that never happened. And there was no inquiry here. He doesn't allege that there was an investigation. All he alleges was that he went to the defendants, said that they violated the law, and then he was fired. He also alleges that he filed the 5500. But the 5500, it can't possibly be construed as an inquiry. Number one, he doesn't say that that's why he was fired. But number two, it's an informational filing that everybody in America has to file if they have 100 participants in their plan. And in this case, if there had been an IRS audit and he complained to the folks or said something to the IRS and then he was fired, we wouldn't be standing here today. I guess you didn't understand my question. I'm sorry. We have exactly the facts in this case, but the filing triggers further an investigation, whatever you would call an investigation, by the Treasury Department. Would his claim then be a valid one for retaliation? Not if he was fired. I'm sorry. I misunderstood your question. Not if he was fired before the investigation began. Well, okay. Then I don't see, I don't see, I don't understand the logic of that because then it can change color whatever happens. Well, what he alleges is that the accountants filed the 5500 that they wanted him to file. He said that there are two different law firms that gave two different opinions. This is in the complaint. Yes. I've read the complaint. And he said that he wanted the 5500s to contain certain information and the company ended up using the 5500 forms that he wanted to include. So I don't see how you can say that he's being retaliated against for an inquiry or an investigation if there was no investigation and if he filed exactly, the complaint says they filed exactly what he wanted them to file. The reason he was fired in the complaint, he says in the complaint, is not because of the 5500. It's because he complained to his bosses saying, hey, you all are violating ERISA. You need to stop it. And then he says they fired him. That would be actionable under Title VII. That would be actionable under the ADA, the ADEA, almost all the employment laws. But Congress did something different with ERISA. Congress said we're not going to have an opposition clause. We're only going to have a participation clause. And so if the 5500 that he wanted was filed because the accountant said, hey, you're right, we're going to follow your advice, then there was no inquiry. It was just an informational submission that was made. We think, Your Honors, that the lower court did the right thing in reading Section 33 of the complaint, reading Paragraph 5 of the complaint, understanding that he was alleging that he was being discharged for opposing what he thought was a violation of ERISA. We think that the lower court correctly read King v. Marriott, which says that an informal internal complaint is not enough. And we think that we respectfully request that this court affirm the decision of the district court. Thank you. Thank you. Mr. Stillman, you have rebuttal. Your Honor, defendants mentioned other circuits that have cited to King, in particular the Second Circuit. The Second Circuit in Nicolau did cite to King, and the court in Nicolau held, like this court in King, that an unsolicited complaint is not covered by Section 510. But it also held that a meeting that is initiated by a company's attorney would be a Section 510 inquiry. And Nicolau stated that that holding was consistent with King. A planned audit, such as we have here, is absolutely more formal than a meeting called by an in-house counsel of a company. So what did plaintiffs sign here? Excuse me? What critical document did the plaintiff sign? The rep letter? The Secretary's understanding is that the plaintiff signed the form 5500 document. But in any event, the signing of the submission of whether form 5500 or the rep letter is not what this decision would turn on. You've never seen the 5500? No, Your Honor. One way or the other. So you can't make a representation of that? No. The Secretary's relying on the complaint just as this court should do. And secondly, Your Honor, the defendants would say we're parsing parts of the complaint regarding what Mr. Trujillo has alleged. But as Judge Stocksworth acknowledged, this is a per se plaintiff on a motion to dismiss. And the complaint read as a whole, as this court instructed in Hunter, does show that Mr. Trujillo gave information during the course of a planned audit. In addition, Mr. Well, who did he give it to? And Your Honor, that was the next thing I wanted to address. The complainant alleged that Mr. Trujillo gave information in several contexts to people within the company, to people in meetings with auditors, in meetings with outside counsel. Well, where does it say he gave information to the auditors? We would read, excuse me, the complaint sections 19 and 20 as well as, paragraph 19 and 20 and paragraph 33 and 27 and 28. But I wanted to address it, the section 510 is not actually required that the information be given to any particular individual, only that the information be given in an inquiry. And so whether the information that was given in an inquiry was given to people in the Right, but in King, that was not in the context of an inquiry. Of a legally required, congressionally mandated inquiry that was occurring. Unsolicited was part of the... Right, it was unsolicited.  Of course, if Mr. Trujillo fit with the facts of King and there was no information provided in the context of preparing a legally required form 5500 that requires the audit, and an audit certainly under ordinary understanding, and audit being a type of inquiry, then we would have a different case. But this information that Mr. Trujillo provided was in the context of an inquiry, two inquiries, excuse me, two audits that were going on concerning two different plans. And so that's why King, yes, sets the floor for formality, that it cannot be just a mere complaint to a supervisor, but that it has to be something more formal. And certainly providing it in the course of an audit does that. And if I could also respond to defendant's counsel references, the cases cited by the secretary, that these were all IRS investigations. The secretary, those cases, excuse me, the secretary cited those cases simply to support the, we think, natural reading that audit is a type of inquiry. And the point is that this court and the Supreme Court have both used the words, described audits as a type of inquiry and used the words as substitutes. The uses of those terms in those decisions did not turn on the fact that those inquiries were governmental IRS inquiries. The point is that this court and the Supreme Court, in natural language under the dictionary definition, understand that an audit is a type of inquiry. Your Honor, we expect to look at this. Congress knows how to draft an opposition clause. You see it throughout the statutes. And they haven't put it in this, in the ERISA context. So why isn't that a signal to us that they don't intend for opposition clauses in this type of complaint to be brought? Well, Your Honor, we think, can I respond to the question? Sure, sure, it's okay, I'll leave it there. The absence of an opposition clause, as you have in Title VII, is what this court, is consistent with this court's decision in King. When you have an unsolicited complaint to management, which would fall under a Title VII type of complaint, and this court decided it was not covered by Section 510. As I was explaining to Judge Azee, it is very different when the information is provided in the context of an audit that is legally required, congressionally mandated, by law. And so it's in response and in the context of an inquiry, an audit being an inquiry. And so we think very separate from a simple opposition clause type of claim. The Secretary respectfully requests a holding, reversal of decision below, and a holding that any person who provides information during the course of an ERISA plan audit is engaged in protected activity under Section 510. Thank you very much. We will come down and greet the lawyers, and then we'll go directly to our next case.
judges: Diana Gribbon Motz, William B. Traxler Jr., G. Steven Agee